**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TRACY JENSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action Nos. 10-1071, 11-999, 11-1180 (ABJ) |
| MICHAEL P. HUERTA, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

Plaintiff Tracy Jenson has filed three cases in this Court arising out of a pay dispute during his former employment as an air traffic controller: Civil Action Nos. 10-1071, 11-999, and 11-1180, which have been consolidated.  Plaintiff has already litigated a separate case arising out of the same facts against the United States, which was finally adjudicated on the merits by the U.S. Court of Appeals for the Federal Circuit.  The claims raised in these consolidated cases, which are made against federal defendants, are barred by the doctrine of claim preclusion, part of the doctrine of res judicata.  These consolidated cases will therefore be dismissed for failure to state a claim on which relief can be granted.

**II.   Background**

On June 25, 2010, plaintiff filed Civil Action No. 10-1071 against the Administrator of the Federal Aviation Administration (FAA) and the Assistant Administrator for Human Resources Management of the FAA.  Compl. at 1, No. 11-cv-1071, ECF No. 1 [hereinafter 1st

Compl.].[1]  In that case, plaintiff alleges that during the time he served as a controller, the FAA planned to privatize certain air traffic control towers.  As part of that plan, plaintiff was to have been promoted within the General Schedule (GS) pay system.  A court decision temporarily halted the implementation of the privatization plan.  During that halt, the FAA and the National Air Traffic Controllers Association (NATCA) entered into a collective bargaining agreement that established a new compensation scheme for air traffic controllers: the Air Traffic Controller (ATC) system.  As a result of the halt, plaintiff was not promoted within the GS pay system as originally scheduled, and when he did eventually transfer into the ATC pay system, he did so from the lower GS grade.  Thus, plaintiff alleges that he received a lower salary within the ATC system than he should have received.  *See* 1st Compl.; *Brodowy v. United States*, 482 F.3d 1370, 1372–74 (Fed. Cir. 2007).  Defendants have moved to dismiss this first case under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).  Def.'s Mot. to Dismiss Compl. at 1, No. 10-cv-1071, ECF No. 14 [hereinafter Mot.].

On May 31, 2011, plaintiff filed Civil Action No. 10-999 against several human resources officials, personnel, and attorneys of the FAA.  Compl. at 5, No. 11-cv-999, ECF No. 1 [hereinafter 2d Compl.].[2]  In that case, plaintiff repeats his allegations, this time against other FAA employees, who he claims are "failing to inform the FAA Administrator that the [collective bargaining] agreement" that allegedly contributed to his pay problem "is a premature application of a pay rule" and "is discriminatory, and that employees cannot change pay systems at the same

---

[1] Plaintiff identified the Administrator as Randolph R. Babbitt and the Assistant Administrator as Ventris C. Gibson.  1st Compl. at 1.  The Court has earlier recognized the misnomer of J. Randolph Babbitt and the automatic substitution of Acting Administrator Michael P. Huerta for Administrator Babbitt and Acting Assistant Administrator Tina Amereihn for Assistant Administrator Gibson.  *See* Mem. Op. and Order at 2 n.1, No. 10-cv-1071, ECF No. 26.

[2] Plaintiff also sued Paul Rinaldi, the current president of the NATCA.  2d Compl. at 5.  All claims against Mr. Rinaldi have been dismissed for lack of subject-matter jurisdiction.  *See* Mem. Op. and Order, No. 11-cv-999, ECF No. 4.

time as moving to a higher-level facility, which are two separate personnel actions." *Id.* This second case has not been served on defendants.

On June 28, 2011, plaintiff filed Civil Action No. 11-1180 against the U.S. Office of Personnel Management (OPM). Compl. at 1, No. 11-cv-1180, ECF No. 1 [hereinafter 3d Compl.]. In that case, he again repeats his allegations, this time against the U.S. Office of Personnel Management, which he claims is "refusing to investigate and issue a directive to the FAA to pay the delayed controllers the same pay raises they would have received if they had moved as scheduled, and rehire any" controllers "who resigned due to being illegally put at the bottom of the pay band." *Id.* at 2–3. This third case also has not been served on defendants. The Court has consolidated these three cases. Mem. Op. and Order, No. 10-cv-1071, ECF No. 26.

### III. Legal Standard[3]

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979)) (citations omitted). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at

---

[3] Because the Court will grant defendants' motion under Rule 12(b)(6) and will sua sponte dismiss plaintiff's other cases for failure to state a claim, the Court will only discuss the legal standard applicable to failure to state a claim.

1949. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 1949 (quoting *Twombly*, 550 U.S. at 555), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* And while a "*pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers[,] . . . even a *pro se* complaint must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). In construing pro se filings liberally, and absent any indication of prejudice to the defendant, the court should read "all of the plaintiff's filings together." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

**IV.      Analysis**

      **A.      Res Judicata Prevents Repetitious Litigation.**

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). To determine whether two cases share the same nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997). The doctrine has two components: claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). These consolidated cases are governed by the doctrine of claim preclusion.

"Under claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 4–5 (D.D.C. 2011) (quoting *Drake*, 291 F.3d at 66). "A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction[,] or form.'" *Id.* at 7 (quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968)) (citing *Nwachukwu v. Karl*, 222 F.R.D. 208, 212 (D.D.C. 2004) (noting the judicial goal of "deciding cases on their merits, as opposed to procedural mishaps dictating the outcome")). Thus, a decision on a motion to dismiss under Rule "12(b)(6) presents a ruling on the merits with res judicata effect." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "A privy is one so

identified in interest with a party to the former litigation that he or she [or it] represents precisely the same legal right in respect to the subject matter of the case"—in other words, a person who or entity that is in privity with the party. *Hafezi v. Construction & Dev., Inc.*, No. 04-cv-2198, 2006 WL 1000339, at *6 (D.D.C. Apt. 14, 2006) (internal quotation marks omitted).

"Res judicata may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim when the defense appears on the face of the complaint and any materials of which the court may take judicial notice." *Sheppard*, 791 F. Supp. 2d at 5 n.3. "The court may take judicial notice of public records from other court proceedings." *Lewis v. Drug Enforcement Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). Res judicata may also be raised sua sponte "because of the policy interest in avoiding 'unnecessary judicial waste.'" *Walker v. Seldman*, 471 F. Supp. 2d 106, 114 n.12 (D.D.C. 2007) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)).

## B. *Brodowy v. United States* Has Claim-Preclusive Effect.

The case with claim-preclusive effect here, of which the Court takes judicial notice, is *Brodowy v. United States*, 482 F.3d 1370 (Fed. Cir. 2007). The Court of Federal Claims dismissed the *Brodowy* suit for lack of subject-matter jurisdiction. The U.S. Court of Appeals for the Federal Circuit disagreed with that holding, but it affirmed the dismissal on the grounds that the plaintiffs had failed to state a claim upon which relief could be granted. *Id.* at 1371. At the outset, the Court explained the privatization plan, the halting of the implementation of that plan, and the imposition of the ATC system in detail:

> The FAA classified control towers by the complexity and volume of their air traffic, ranging from Level 1 (least traffic) to Level 5 (most traffic). All controllers were compensated under the General Schedule ("GS") system . . . . Beginning in 1994, the FAA began to implement a plan to privatize all Level 1 facilities. It offered controllers in those towers the option to transfer to a higher level facility or to retire or resign from federal service. . . .

> In March 1998, however, the United States District Court for the Northern District of Ohio ruled that the FAA had failed to conduct the required procedural analysis before initiating the privatization program. The effect of the court's ruling was to temporarily halt the implementation of the privatization plan.
> During the period that the privatization plan was halted, the FAA and the NATCA entered into a collective bargaining agreement that established a new compensation scheme for air traffic controllers. The new scheme was referred to as the Air Traffic Controller ("ATC") system.
> The ATC system created a set of "Pay and Reclassification Rules" to replace the grades and steps of the GS system. Under the new scheme, controllers were assigned an ATC level and pay band (akin to GS grade and step levels). The collective bargaining agreement also contained a conversion rule ("Rule 35") for transferring air traffic controllers at Level 2 through Level 5 facilities from the GS system to the ATC system. It provided a formula for determining a controller's ATC level and pay band, which was based solely on the controller's prior GS grade and step. However, Rule 35 did not call for controllers at Level 1 facilities to be transferred into the ATC system, as those towers were still slated for privatization. . . .
> The ATC pay scheme took effect in October 1998. . . .
> . . . [A]ir traffic controllers who transferred to higher level towers prior to October 1998 were promoted to higher pay grades to correspond to the higher level of their new jobs within the GS system. Those air traffic controllers transferred within the GS system; because their transfer to a higher level facility was accompanied by a grade increase under the GS system, they were entitled under 5 U.S.C. § 5334(b) to be paid at a step level within the higher grade that was two steps above the level at which they were being paid in the lower rated facility. [The air traffic controllers who] transferred from the Level 1 facilities after October 1998 … transferred from the GS system directly into the ATC pay system. They therefore did not receive the benefit of the statutory two-step increase that they would have received if they had been transferred at a time when the GS system was still in effect for the facilities to which they transferred. As a result, [those controllers] were assigned a lower ATC level and pay band than similarly situated controllers who transferred from Level 1 facilities before the ATC system took effect.

*Id.* at 1372–73 (citations and footnotes omitted). The Court then determined that 5 U.S.C. § 5334(b), which "ensure[s] that all employees who are promoted to a higher GS grade receive an increase in pay, not a reduction," only applies to promotions *within* the GS system. *Brodowy*, 482 F.3d at 1374. Because the plaintiffs in *Brodowy* were controllers who were promoted directly from the GS system to the ATC system, with no intermediate promotion within the GS system, § 5334(b) was deemed to be inapplicable. *Id.*

7

Both *Brodowy* and these consolidated cases case clearly arise out of the same pay dispute. Plaintiff Jenson was a plaintiff in *Brodowy*, and the federal defendants in these consolidated cases are in privity with the United States—the defendant in *Brodowy*. *See Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1955) ("[T]he government, its officers, and its agencies are regarded as being in privity for [claim-preclusive] purposes." (citing *Di Silvestro v. Gray*, 194 F.2d 355 (D.C. Cir. 1952))); *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 416 (D.D.C. 2008) ("'Litigation involving the government is generally binding with respect to governmental officials who are sued in their official capacities in later actions.'" (quoting *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987)). The Federal Circuit's decision was final and made on the merits. Thus, *Brodowy* has claim-preclusive effect in these cases, and the claims raised therein, all of which stem from the air traffic controllers' pay dispute, are barred, as discussed more fully below.

  **C.**   **Civil Action No. 10-1071 Is Barred by Claim Preclusion and Will Be Dismissed.**

In Civil Action No. 10-1071, plaintiff urges the Court to distinguish between the "primary injustice" of not receiving pay raises during the "14 month delay" in the implementation of the privatization plan and the "secondary injustice" of not receiving pay raises at the end of that delay, once he was transferred directly into the ATC program. Compl. at 3–4; Resp. to Def.'s Mot. to Dismiss at 1–2, No. 10-cv-1071, ECF No. 16 [hereinafter Opp'n]; *see also* Resp. to Def.'s Mot. to Vacate the Order Granting Pl. in Forma Pauperis Status at 2–3, No. 10-cv-1071, ECF No. 7; Resp. to "Mot. to Stay Proceedings" at 1–2, No. 10-cv-1071, ECF No. 8. He contends that only the secondary injustice was previously litigated and that the primary injustice has only been recently and "inadvertently discovered by FOIA request." Compl. at 3; *see* Opp'n at 18 (claim concerning the secondary injustice "has not been previously litigated, as

no previous case has concerned failure to give retroactive pay raises for during [sic] the 14 month delay"). Defendants argue that plaintiff has posited a distinction without a difference. Mot. at 9. But the Court need not decide whether there is a meaningful distinction between the two aspects of plaintiff's claim because plaintiff is precluded from bringing any claim that could have been brought in *Brodowy*, even if the claim was not actually litigated in that suit. *See Drake*, 291 F.3d at 66 (noting that claim preclusion bars all claims that "could have been raised" in the prior action having preclusive effect).

Plaintiff informs the Court that the evidence that supports his claim—employment records known as SF-50s for three of his former coworkers—"has just been discovered." Opp'n at 28. If he is alleging that newly discovered evidence should overcome the claim-preclusive effect of *Brodowy*, that argument is unavailing. "[N]ewly discovered evidence normally does not prevent the application of *res judicata*," unless the evidence was "either fraudulently concealed or . . . could not have been discovered with due diligence." *Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985) (citations and internal quotation marks omitted).

Here, plaintiff does not supply any facts that would demonstrate that the material was deliberately concealed, and he has not made a showing that the evidence could not have been discovered by a diligent search. Instead, as defendants put it, plaintiff only discovered the material recently "because he only asked for it recently." Mot. at 10. Plaintiff responds that he "was not aware of, nor could he be expected to suspect, that" he could have acquired the records, "due to privacy laws." Opp'n at 31. He claims that he was only recently "told about this ability," *id.*, but he does not assert that he was misled before that, or that anyone had a duty to inform him of the availability of the records at an earlier time. And the fact that plaintiff was

successful in obtaining the material once he propounded a FOIA request shows that the material could have been discovered if it had been sought at an earlier time.

Plaintiff also contends that *Brodowy* was wrongly decided, and that the Court of Federal Claims misunderstood the plaintiffs' complaint and arguments in that case. Opp'n at 10, 24, 28. But this Court has no authority to second-guess the decision of the Federal Circuit, and plaintiff's implied suggestion that the Court should revisit that decision contravenes the principles of efficiency, fairness, and finality that underlie the doctrines of res judicata and claim preclusion. The Court will therefore grant defendants' motion and dismiss this case for failure to state a claim upon which relief can be granted.

### D. Civil Action No. 11-999 Is Barred by Claim Preclusion and Will Be Dismissed.

In Civil Action No. 11-999, plaintiff claims that various FAA employees are "failing to inform the FAA Administrator that the [collective bargaining] agreement" that allegedly contributed to his pay problem "is a premature application of a pay rule" and "is discriminatory, and that employees cannot change pay systems at the same time as moving to a higher-level facility, which are two separate personnel actions." 2d Compl. at 5. This second case plainly arises out of the same pay dispute as *Brodowy*: in *Brodowy*, plaintiff complained of the pay problem itself, and in this second case, plaintiff has complains that various FAA employees are not fixing the pay problem because there failing to inform their boss of various details about that problem. Although this alleged failure-to-inform claim was not litigated in *Brodowy*, plaintiff could have litigated it in that case, which he filed against the United States and in which he should have pled all claims he had against federal governmental defendants arising out of the pay dispute. The Court will therefore sua sponte dismiss this second case for failure to state a claim upon which relief can be granted.

**E.     Civil Action No. 11-1180 Is Barred by Claim Preclusion and Will Be Dismissed.**

In Civil Action No. 11-1180, plaintiff claims that OPM is "refusing to investigate and issue a directive to the FAA to pay the delayed controllers the same pay raises they would have received if they had moved as scheduled, and rehire any" controllers "who resigned due to being illegally put at the bottom of the pay band." 3d Compl. at 2–3. This third case plainly arises out of the same pay dispute as *Brodowy*: in *Brodowy*, plaintiff complained of the pay problem itself, and in this third case, plaintiff complains that OPM is not fixing the problem by failing to investigate it. Although this alleged failure-to-investigate claim was not litigated in *Brodowy*, plaintiff could have litigated it in that case, which he filed against the United States and in which he should have pled all claims he had against federal governmental defendants arising out of the pay dispute. The Court will therefore sua sponte dismiss this third case for failure to state a claim upon which relief can be granted.

**V.     Conclusion**

For the reasons discussed above, plaintiff's three lawsuits are barred by the doctrine of claim preclusion and will be dismissed for failure to state a claim upon which relief can be granted. A separate Order consistent with this Memorandum Opinion will issue.

DATE: December 12, 2011                                         /s/
                                                                AMY BERMAN JACKSON
                                                                United States District Judge